## UNITED STATES AT THE RELATION OF ST. LOUIS SOUTHWESTERN RAILWAY COMPANY *v.* INTERSTATE COMMERCE COMMISSION ET AL.

ERROR TO THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 398. Argued January 23, 24, 1924.—Decided February 18, 1924.

1. Congress may make one fact *prima facie* evidence of another if the inference is not so unreasonable as to be a purely arbitrary mandate. P. 77.
2. Under § 19a of the Act to Regulate Commerce, as amended, directing the Commission to investigate, ascertain and report the value of the properties of common carriers, and to hear the protests of any carrier against a valuation tentatively made; declaring a final valuation *prima facie* evidence of the value of the carrier's property in all proceedings under the act and in various judicial proceedings, and providing that, unless otherwise ordered by the Commission, its records and data shall be open to the inspection and examination of the public. *Held:*
(*a*) That an order of the Commission denying inspection of records by others than its employees, unless and until offered in evidence at hearings upon protests or before a court, was valid against an interested carrier in so far as the claim to examine them might be based upon the naked ground of their being public documents. P. 78.
(*b*) Subject to the right of the Commission to prevent undue interference with the work in its offices, and undue protraction of hearings, manifest justice requires that the carrier be enabled to examine and meet the data upon which preliminary valuation of its property is founded, and, to this end, be given such information in advance of the hearing as will enable it to point out errors. *Id.*
(*c*) This claim of the carrier should not be denied upon the ground of public policy, nor upon the ground that the evidence was given the Commission in confidence. *Id.*
(*d*) The carrier is not entitled to subpoenas from the Commission not presently needed. P. 79.
290 Fed. 264, affirmed.

ERROR to a judgment of the Court of Appeals of the District of Columbia, affirming a judgment of the Supreme Court of the District, which dismissed a petition for a mandamus against the Interstate Commerce Commission and some of its officials.

*Mr. J. R. Turney,* with whom *Mr. C. D. Drayton* was on the brief, for plaintiff in error.

The Valuation Act did not empower the Commission to abrogate relator's right, as a party litigant, to examine records and data in the possession of the Commission containing evidence material to the prosecution of relator's protest.

The value reported in the tentative valuation is a mathematical calculation based upon three subordinate findings, (1) the so-called cost of reproducing the physical property, (2) the amount of depreciation in the physical property, and (3) the present value of relator's lands. The reproduction cost is based entirely upon certain average unit prices obtained from statistical data gathered and compiled by the employees of the bureau. The amount of depreciation deducted was determined primarily by the service life of the several physical units also shown by the averages of data similarly gathered and compiled by the Commission's employees. The present value of the lands of relator was determined by the assessment for tax purposes of certain other property in the vicinity, by the sales of like property in the vicinity and by the opinion of certain unnamed persons as to the value of lands lying in the vicinity of relator's lands.

Assuming, but not conceding, that this is the correct method of valuing railroad property, the burden cast upon a protestant can be sustained only by showing that these underlying data are incorrect in one or more of the following particulars: (1) because the facts contained in the data are untrue; (2) because the projects from

which the statistical data were compiled were unfairly selected or were inapplicable to the case in which the average is to be used; (3) because other and material relevant data which would have affected the result materially were either not considered or were excluded in making the compilation; and finally, (4) because the actual analyses and compilations of the data were incorrect mathematically, in theory, application or arithmetic.

The Commission states that the statistical data above described were gathered from nation-wide sources, embracing, not only all carriers, but innumerable manufacturers, etc. In order to make the foregoing tests of the accuracy and applicability of the facts stated in these data, it will be necessary to investigate the original records from these many sources. To ascertain whether the statistical data are complete it will be necessary to compare and analyze the compilations used by the Commission with the results of similar studies of other data made by the protestant. To test the experiential qualifications of the men upon whose opinion various facts are based, it will be necessary to investigate the education, mental habit, the environment and objective point of the person giving the facts, the motive prompting his opinion or his selection, as well as the extent of his information. With respect to the sales of land used as a basis for fixing the land values, it will be necessary to investigate whether or not the property sold was comparable with that of the property of the railroad; whether the sale was voluntary or made under duress or coercion; whether the consideration shown was in fact actually paid; whether the area reported was the correct area, and finally, what effect the inclusion of other sales omitted by the Commission would have had on the unit price. When these facts have been investigated, it will then be necessary to recompile and analyze the data to determine whether or not the analysis used by the Bureau's employees was correct mathematically.

There is a fundamental difference between the evidence to which access is sought in this case and that which ordinarily forms a predicate of judicial action. The time required to make such examination and analysis means that unless the relator has the opportunity to examine the data in advance of the hearing, its right to contest the tentative valuation will be denied for all practical purposes.

The data sought consist of statistics and records gathered from a large number of different sources by means of questionnaires, circulars and personal interviews purporting to show the cost and values of railroad property. They were gathered, compiled and analyzed by officers of the Government at public expense in performance of a statutory duty and are now preserved in the Commission's files as a permanent memorial of how that duty was performed. They are, therefore, public records, which a litigant has a right to examine. *People* v. *Peck,* 138 N. Y. 386; *Coleman* v. *Commonwealth,* 25 Gratt. 865; *Robinson* v. *Fishback,* 135 Ind. 132.

Under paragraph (j) of the valuation section the final value fixed by the Commission is made *prima facie* evidence of the value in all judicial proceedings, in which the data would be material evidence on behalf of the relator and to impeach this *prima facie* showing. It is not necessary in order for the right to examine a public record to arise, that the litigation be pending. The right exists if the data contain evidence material to the prosecution of a claim or a defense in a case which may arise. *Citronelle* v. *Skinner,* 60 Ala. 812; *Ferry* v. *Williams,* 41 N. J. L. 332; *Ex parte Uppercu,* 239 U. S. 435.

The discretion which the statute (par. e) gives the Commission to seal its records is limited to the general public, and does not refer to litigants or other persons who have the right of access to the evidence independent of the statute. See *Palacios* v. *Corbett,* 172 S. W. 777; *Wellford* v. *Williams,* 110 Tenn. 549; *Colescot* v. *King,* 154 Ind. 621.

The Commission's construction of the statute does not foreclose judicial action. *Work* v. *McAlester-Edwards Co.,* 262 U. S. 200; *Roberts* v. *United States,* 176 U. S. 221; *Lane* v. *Hoglund,* 244 U. S. 174.

Denial of the right was in any event outside the discretion of the Commission, and arbitrary and void.

The statement that opening the records would be detrimental to the public interest, conveys no reason.

The statement that disclosure would make it impossible to secure reliable and uninfluenced opinions, means that justice will more likely be done in a proceeding *in camera* than it will in one in which the parties can hear and be heard. See *Jackson* v. *Mobley,* 157 Ala. 108; *Re Egan,* 205 N. Y. 147.

That it would prolong the work, increase the expense and interfere with performance of duties of the Commission's employees, are reasons upon their face without legal force. The statute declares that the records shall be open to the public, except for good cause shown. The Commission has no more right to decline to perform a duty placed upon it by Congress, because the performance of the duty will require time and expense, than it has to decline to perform it upon the ground that it is impossible of performance, or that it would be futile to do so. *Kansas City Southern Ry. Co.* v. *Interstate Commerce Comm.,* 252 U. S. 178.

The reasons which Congress had in mind that would warrant the sealing of the records were those which would apply to some particular case or some particular record, but not these which would apply to the opening of all records in all cases.

Since the statute relied upon by the defendants requires that the records shall be public, in the absence of an order based upon lawful reasons, an order sealing the records which does not meet this requirement is utterly null and void.

Mandamus is the proper remedy. *Ex parte Bradley,* 7 Wall. 364; *Mauldin* v. *Matthews,* 81 S. Car. 414; *Kelleher* v. *School Board,* 134 Mo. 296; *Yeargin* v. *Maschke,* 90 Wash. 249; *California Pine Box Co.* v. *Superior Court,* 13 Cal. App. 65.

Relator was entitled to a subpoena *duces tecum* requiring the production of the documentary evidence underlying the tentative valuation and, for the purpose of cross examination, the attendance of the employees of the Bureau of Valuation who gathered, compiled and analyzed such evidence. *Omaha* v. *Omaha Water Co.,* 218 U. S. 180, distinguished.

The valuation proceeding is a quasi judicial one, and therefore, in accordance with the principles laid down in *Interstate Commerce Comm.* v. *Louisville & Nashville R. R. Co.,* 227 U. S. 88, relator, as a party litigant, was entitled to be apprised as to all evidence considered. The Interstate Commerce Act expressly provides (§ 17) that "proceedings before it [the Commission] . . . shall conform as nearly as may be to those in use in courts of the United States." Congress intended the Commission to administer § 19a of the act in precisely the same manner that it had administered others—by giving all parties, including its own employees, an opportunity to introduce evidence, and then deciding the issues upon the evidence thus introduced.

Any judgment reached by a court with respect to the value of a carrier's property in a case involving the Act to Regulate Commerce must be entirely based upon the very evidence which the Commission considered in making the finding. How could the court make such a finding if there were no record of a substantial part of the evidence considered by the Commission, or, especially, if the Commission made its tentative finding without evidence? This paragraph (j) of the act of necessity restricts the Commission to a proceeding which determines

value upon evidence which a court can consider, when under the act it becomes necessary for a court to pass upon that question.

That Congress intended that the valuation proceeding should be of a judicial nature is shown by the effect which it gives to the order of the Commission made as a result of the proceeding, not only in making such order *prima facie* evidence of the valuation of relator's property in all proceedings (including judicial proceedings), but in authorizing the Commission to use the valuation and the data supporting it for determining (1) reasonable charges under paragraph 5, § 1; (2) amount of sale price and security issues upon the purchase by one carrier of the property of another under paragraph 6b, § 5; (3) reasonableness of aggregate level of rates of the country as a whole, paragraphs 2 and 4, § 15a; (4) amount of excess earnings to be recaptured from carriers under paragraph 6, § 15a; (5) amount and conditions of security issues by carriers under § 20a of the act.

A proceeding where one's property rights may be taken through administrative action without anything more than a mock hearing in which he is neither apprised of the evidence considered nor given opportunity to introduce relevant evidence, would constitute a failure of due process under the Fifth Amendment. *Bratton* v. *Chandler*, 260 U. S. 110.

Paragraph (i) gives the carrier the right to a hearing, including the right to introduce evidence. Of what value is this right if the carrier be denied the right not only to show that evidence upon which the tentative valuation is based is false, but even to know what that evidence is?

No claim is made by the carrier to a right to a hearing prior to the time the tentative valuation is announced. Nor is such a hearing essential to the protection of its rights.

The provisions of the Act to Regulate Commerce which relate to rate hearings are almost identical in terms with

those in § 19a.   In both the governing words are " investigate " and " hearing."   Some years ago the Commission took the position that it could base its findings in rate cases upon evidence not received at the hearing, and which was undisclosed to the carrier.   But this Court in *Interstate Commerce Comm.* v. *Louisville & Nashville R. R. Co.*, 227 U. S. 88, overruled the contention.

This evidence constitutes an integral part of a " proceeding " under the Interstate Commerce Act.   *Deere Plow Co.* v. *Jones*, 68 Kans. 650; *American Shipbuilding Co.* v. *Whitney*, 190 Fed. 109.   And such proceedings under the express terms of paragraph (1) of § 17 " shall be public at the request of any party interested."

The excuse that these data are private and confidential information either of third persons, the Government or of the Commission or its employees, ought to have no standing whatever in a court of justice.   *Boston & Maine R. R.* v. *State*, 75 N. H. 513; *Wertheim* v. *Continental Ry. Co.*, 21 Blatchf. 246.

No officer of the Government, as such, has any privilege as a witness.   *Gugy* v. *Maguire*, 13 Sou. Can. 33; *Hartranft's Appeal*, 83 Pa. St. 433; Wigmore, Evidence, par. 2375; II Robertson's " Trials of Burr," pp. 517–519; I *id.*, p. 182.

The Commission had no discretion to refuse to issue a subpoena, under § 12 of the Act to Regulate Commerce.

If the relator is entitled to have the records produced its right to have a subpoena therefor should not be denied upon the assumption that the Commission will require its employees to be present at the hearing.

The data were sufficiently described.

Mandamus is the proper remedy to compel the issuance of the subpoena.   The duty is ministerial.   *Ex parte Peterson*, 253 U. S. 300; *San Francisco Gas Co.* v. *Superior Court*, 155 Cal. 30.

The Supreme Court of the District of Columbia had jurisdiction.

This is not a suit to set aside or annul an order of the Interstate Commerce Commission. *Ex parte Uppercu,* 239 U. S. 435.

The order in question is an ex parte administrative one which does not relate to anyone except the Commission. Neither the relator nor any other person, outside of the Commission's own employees, is required " to do or abstain from doing any act." The order, therefore, is not reviewable in a direct proceeding to annul or set it aside. *United States* v. *Illinois Central R. R. Co.,* 244 U. S. 82; *Procter & Gamble Co.* v. *United States,* 225 U. S. 282.

The jurisdiction which the Commerce Court obtained was only " that now possessed by the Circuit Courts of the United States." Jud. Code, § 207; *Procter & Gamble Co.* v. *United States, supra.* Therefore, unless the words " Circuit Courts " include the Supreme Court of the District of Columbia, the jurisdiction of the latter court which undoubtedly existed prior to the establishment of the Commerce Court was not vested in the Commerce Court, but has continued in the Supreme Court of the District. If the words " Circuit Courts of the United States " are to be construed as vesting the jurisdiction of the Supreme Court of the District in the Commerce Court, then, in the similar provision of the Urgent Deficiency Appropriations Act, " District Courts " is sufficiently broad to include the Supreme Court of the District of Columbia when that jurisdiction is reinvested.

In several mandamus cases, each embracing orders of the Commission, jurisdiction arising subsequent to the enactment of the Urgent Deficiency Appropriations Act has been upheld by this Court. *Interstate Commerce Comm.* v. *Humboldt S. S. Co.,* 224 U. S. 474; *Kansas City Southern Ry. Co.* v. *Interstate Commerce Comm.,* 252 U. S. 178; *Louisville Cement Co.* v. *Interstate Commerce Comm.,* 246 U. S. 638.

*Mr. P. J. Farrell* for defendants in error.

The District Courts of the United States have exclusive original jurisdiction of the subject matter, under the Commerce Court Act and the Act of October 22, 1913, 38 Stat. 219. The real purpose is to annul the Commission's order of October 9, [the substance of which is given in the Court's opinion, *infra,* 75,] made under the Interstate Commerce Act, particularly § 19a, par. (e).

The petition does not allege facts showing illegal acts or breach of legal duty by the defendants in error, or any of them.

The petition does not show that the Commission has refused to issue subpoenas requiring the other defendants to appear at a hearing before the Commission and testify concerning the valuation of the property referred to in the petition.

Congress intended to leave the Commission free to exercise its own discretion as to the issuance of subpœnas; and it would not be proper for the Court, by mandamus, to interfere. *Interstate Commerce Comm.* v. *Waste Merchants Assn.,* 260 U. S. 32.

No particular record or datum is mentioned, or designated.

Plaintiff's motion to the Commission was an attempt to secure a search warrant to enter upon a fishing expedition in the Commission's Bureau of Valuation for the purpose of ascertaining whether there is anything in the working papers of the Commission's employees which, in the opinion of plaintiff, can profitably be used by it in any hearing before the Commission which may hereafter be held upon its protest. Representatives of the plaintiff and employees of the Commission could not at the same time use the records and data mentioned, and this, we submit, clearly demonstrates the correctness of reasons for denying the motion set forth in the Commission's order of October 9. See *Jenkins* v. *Bennett,* 40 S. Car. 393.

The theory of the plaintiff appears to be that the Commission cannot perform properly the appraisal duties under § 19a unless, upon demand, it exhibits to plaintiff for criticism all information the Commission may obtain concerning costs and values in the investigation. This ignores the difference between the duties of the Commissioners as appraisers under said § 19a, and the duties they perform in determining disputed questions of fact in rate and similar cases. *Omaha* v. *Omaha Water Co.,* 218 U. S. 180.

If the Commission, in fixing final values, commits errors of law, they can be corrected in suits instituted in District Courts of the United States; but they cannot be corrected, either before or after the final values are so fixed, in mandamus proceedings.

If, after plaintiff has introduced evidence in support of its protest, in a hearing before the Commission, evidence of a contrary import is introduced at the hearing, plaintiff will then have a right to test the accuracy, competency and relevancy of the latter evidence, but, in advance of the introduction by it of its own evidence, it may not properly insist upon being given an opportunity to examine all matters in the Commission's Bureau of Valuation for the purpose of ascertaining whether, in its opinion, such evidence of contrary import is therein contained. And what is said here about the introduction of evidence before the Commission will be equally applicable to the introduction of evidence in court, if plaintiff challenges in court the validity of action the Commission may finally take in determining the value of the property.

MR. JUSTICE HOLMES delivered the opinion of the Court.

This proceeding arises under what is now § 19a of the Interstate Commerce Act. Act of February 4, 1887, c. 104, 24 Stat. 379, as amended by Act of March 1, 1913, c. 92, 37 Stat. 701, and Act of February 28, 1920, c. 91,

§ 433, 41 Stat. 456, 474, 493. Obeying this section the Interstate Commerce Commission made a tentative valuation of the relator's property and served it upon the relator, the St. Louis Southwestern Railway Company, in July, 1921. In due time the relator filed its protest against the valuation, as provided by the act, especially against the findings of the final value of the property, the cost of reproduction new, the cost of reproduction less depreciation, present value of relator's lands, and the present cost of condemnation and damages or of purchase of lands in excess of present value. In July, 1922, the Commission, as required, made an order setting the matter down for hearing in Washington on September 26, 1922. On July 20 the relator filed a motion with the Commission praying for an order allowing it to examine the underlying data upon which the valuation was based, and for a *subpœna duces tecum* to named officers of the Commission directing them to bring with them to the hearing all the data in any way relating to the matter in issue. In August the Commission canceled the hearing and in October made an order to the following effect. It recited that the opening of certain records to inspection before they were offered in evidence before the Commission in hearings upon protests or before a Court of competent jurisdiction, would be detrimental to the public interest; would make it impossible to secure as uninfluenced opinions upon land values and price and cost information as the Commission could otherwise; would unnecessarily prolong the work, and greatly increase the expense; and would seriously interfere with due performance of the regular duties of the Commission's employees. It therefore ordered that, until further order, office or field notations, &c., in the Bureau of Valuation; opinions and correspondence from or to any employee thereof; land field notes; land computation sheets; cost information secured from others than the carrier in question; cost studies and

cost analyses prepared by the Bureau of Valuation, should not be open to inspection by other than the employees of the Commission unless and until offered in evidence at hearings or before a Court as above.

Thereupon the relator filed the present petition for mandamus in the Supreme Court of the District of Columbia. It sets forth the foregoing facts in detail and annexes a copy of the valuation, with the Commission's statement of the kinds of proof and methods used in making its findings, and further statement that those findings were based upon certain underlying facts compiled by the employees of the Bureau of Valuation, these underlying facts being indicated at some length. They embraced contracts for materials made over the whole country for the ten years ending June 30, 1914; contracts for constructing railroads or parts during the same time; actual expenditures for various classes of construction work in unidentified projects selected by the Bureau; books, vouchers and invoices of materials, &c., used in construction during the same time; undisclosed records purporting to show the service life of various classes of material, &c., together with an inspection report by the Bureau's engineers showing the age of the materials, &c., in relator's railroad. From such data, classified and selected, compilations and analyses were made purporting to show average cost of materials, &c., &c., and the average ratios of engineering and general expenses during construction and interest during construction to cost of construction in selected projects, and the average service, life, age, &c., of the various units of property in relator's railroad. These compilations were used as the basis for finding cost of reproduction new and cost of reproduction less depreciation in the relator's case. Similarly the present value of relator's lands is said to have been reached upon uncommunicated data which it is not necessary to repeat, and the present cost of condemnation or damage or of

purchase in excess of the present value of relator's land is said to have been reached in the same general way. The foregoing data are alleged to have been reduced to writing and to be within the control of the Commission. It is alleged that much of the information gathered was not under oath and that many statements were made orally and that many opinions were taken from persons not qualified to express the same.

The relators prayed for an order directing the Commission to allow it to examine these underlying data, contracts, reports, compilations and records of the Bureau of Valuation so far as in any way related to valuation of the relator's property, and to make written and photographic copies of the same. It also asked that the Commission be directed to issue subpoenas to named officers as in the motion made to the Commission stated above. On a motion to that effect the petition was dismissed by the Supreme Court and the judgment was affirmed by the Court of Appeals. We are of opinion that the judgment was right, and will indicate not only the grounds of our decision but what we think that the relator reasonably may demand.

The relator's claim of right has for its broadest basis the fact that the valuation when made final by the Commission will be *prima facie* evidence in various judicial proceedings in which the value of the property is material to the decision of the case. But the legislature may make one fact *prima facie* evidence of another if the inference is not " so unreasonable as to be a purely arbitrary mandate." *Lindsley* v. *Natural Carbonic Gas Co.*, 220 U. S. 61, 82. If Congress had given no hearing before the Commission but still had made its conclusion *prima facie* evidence of value, it would be hard to say that any constitutional rights of the railroads had been infringed. *Reitler* v. *Harris*, 223 U. S. 437; *Meeker* v. *Lehigh Valley R. R. Co.*, 236 U. S. 412, 430. The strongest basis for the relator's claim is the statute itself.

The statue provides that " Unless otherwise ordered by
the commission, with the reasons therefor, the records and
data of the commission shall be open to the inspection
and examination of the public."  The Commission has
ordered otherwise as we have stated and the order puts
an end to the claim to examine the data on the naked
ground that they are public documents.  But as the
statute provides for a hearing before the Commission it
does not follow necessarily that the parties to the pro-
ceeding are subject to the same rule when the data are
desired as evidence.  The hearing to be sure is not of the
ordinary kind.  The railroads have no adversary.  The
Commission of course has no object except to arrive at
the truth.  It is not to be cross examined for bias or other-
wise as to its capacity to decide or modes of deciding what
is entrusted to it, but on the other hand, since it must
grant a hearing, manifest justice requires that the rail-
roads should know the facts that the Commission supposes
to be established, and we presume that it would desire the
grounds of its tentative valuation to be subjected to
searching tests.  But there are necessary limits.  While
there can be no public policy or relation of confidence that
should prevail against the paramount claim of the roads,
the work of the Commission must go on, and cannot be
stopped as it would be if many of the railroads concerned
undertook an examination of all its papers to see what
they could find out.  We need not now consider whether
the statute authorizes the order if it be construed to apply
to cases like the present, for we cannot doubt that this
Commission will do all in its power to help the relator to
whatever it justly may demand.  As yet it has made no
just demand, for we accept the Commission's statement
that a general examination in the Commission's offices
would interfere too much with its work.  Moreover, at the
hearing there will be limits, at the discretion of the Com-
mission, to the right to delay the sittings by minute in-

quiries that might protract them indefinitely. See *Newton* v. *Consolidated Gas Co.*, 258 U. S. 165, 175. But subject to that discretion, we think that, in such way as may be found practicable, the relator should be enabled to examine and meet the preliminary data upon which the conclusions are founded and to that end should be given further information in advance of the hearing, sufficient to enable it to point out errors, if any there be. No present need is shown for the issue of subpœnas; and with this intimation of our views of the Railroad's rights we repeat our opinion that the judgment should be affirmed.

*Judgment affirmed.*

MR. JUSTICE BUTLER took no part in the decision of this case.