NORWEGIAN NITROGEN PRODUCTS CO. *v.* UNITED STATES (No. 3454)[1]

[1] T. D. 45674.

United States Court of Customs and Patent Appeals, May 2, 1932

De Vries, Crawford & McCook (Marion De Vries of counsel) for appellant. Charles D. Lawrence, Assistant Attorney General (Ralph Folks, special attorney, of counsel), for the United States.

[Oral argument February 12, 1932, by Mr. De Vries, Mr. Folks, and Mr. Lawrence]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

BLAND, Judge, delivered the opinion of the court:

This is an appeal by the importer from the judgment of the United States Customs Court (one member dissenting), holding sodium nitrite to be properly dutiable at 4½ cents per pound in accordance with a proclamation of the President of the United States, T. D. 40204, 45 Treas. Dec. 642, made pursuant to the terms of section 315 of the Tariff Act of 1922.

That portion of the protest of the importer, appellant, with which we are here concerned, is grounded upon the contention that the

Tariff Commission, during its investigation of production costs which preceded the proclamation of the President, did not—

at any time give reasonable public notice thereof and did not afford interested parties appearing therein reasonable opportunity either to be present, or to produce evidence, or to be heard, as required by law and the rules of said Commission;

that the proceedings before the commission were null and void, which resulted in there being made no investigation of the subject matter by the commission, and that under such circumstances the proclamation of the President is invalid and the collector's levying of duty at a rate higher than 3 cents per pound as provided for in paragraph 83 of said tariff act is unwarranted in law.

Appellant in its brief points out that the material facts in this case are fully recited in *Norwegian Nitrogen Products Co.* v. *Tariff Commission*, 274 U. S. 106, and we think the facts on which the issues here depend are there sufficiently set out, and we quote the following from the opinion in that case:

The Tariff Act of September 21, 1922, ch. 356, sec. 315, 42 Stat. 858, 941, vested in the President the power to adjust tariff duties so as to equalize differences in costs of production here and abroad of articles wholly or in part the growth or product of this country, whenever an investigation by the Tariff Commission should reveal disparate costs. Such investigation is made a prerequisite to action by the President in proclaiming changes of rates. By Executive Order of October 7, 1922, it was provided that all petitions or applications for action or relief under the so-called flexible sections of the Tariff Act of 1922 should be filed with the Tariff Commission.

In October, 1922, the American Nitrogen Products Co., a corporation of the State of Washington, filed with the United States Tariff Commission a petition praying for a fifty per cent. increase in the duty imposed by the Tariff Act of 1922 upon imported sodium nitrite. The following March, the Tariff Commission, for the purpose of assisting the President in the exercise of the powers delegated to him by the act of 1922, ordered an investigation of the differences in cost of production of sodium nitrite at home and abroad, and of other pertinent facts and conditions. It was further ordered that all parties interested should be given an opportunity to be present and produce evidence at a public hearing to be held at a date to be fixed later.

Plaintiff in error engaged in the importation of nitrogen products into the United States which it sells on commission. It represents in the United States, as exclusive agent, the Norwegian Hydro-Electric Nitrogen Corp., the only manufacturer of sodium nitrite in Norway. Representatives of the commission, in the course of its investigation, proceeded to Norway and Germany and sought from the Norwegian company and from German manufacturers data showing the cost of production of sodium nitrite in those countries. This was refused. The commission's experts were permitted to examine the books and records of American manufacturers, obtaining information of the domestic cost of production and other relevant data. This information was given under promise that it would be treated as confidential and upon the assurance that the rules of the commission and sec. 708 of the Revenue Act of September 8, 1916, ch. 463, 39 Stat. 756, 798, so required. Section 708 prohibits the commission from revealing "the trade secrets or processes" of which it might learn in the course of its investigations.

After making its investigation, the commission ordered a public hearing to be held on September 10, 1926. Its rules provided that: "Parties who have entered appearances shall prior to the filing of briefs, have opportunity to examine the report of the commissioner or investigator in charge of the investigation and also the record except such portions as relate to trade secrets and processes."

At the hearing, plaintiff appeared by counsel and demanded a complete copy of the application of the American Nitrogen Products Co., and attempted to cross-examine its president as to its cost of production. In making these and other similar demands in the course of the hearings, plaintiff relied on the provisions of sec. 315 (c) of the act of 1922, reading in part: "The commission shall give reasonable public notice of its hearings and shall give reasonable opportunity to parties interested to be present, to produce evidence, and to be heard. The commission is authorized to adopt such reasonable procedure, rules, and regulations as it may deem necessary." The commission, holding that its action was controlled by sec. 708 of the Revenue Act of 1916, prohibiting it from divulging trade secrets or processes of which it acquired information in the course of investigation, excluded the questions asked and disclosed only a copy of the application of the American company, from which a statement of its costs of production had been deleted. On September 15, 1923, the commission made a preliminary report stating the results of its inquiry. The report contained a review of the data in the possession of the commission, including an estimate of the cost of production in Norway, based upon such public sources in Norway as were available to it, both the Norwegian company and the plaintiff having refused to give any information on the subject. But following its settled policy, it withheld all material which would reveal the individual production costs of American manufacturers. Its practice is to publish the average domestic cost, but this was withheld here because the average cost was deemed informative of individual costs in view of the small number of American manufacturers. Hearings were resumed on September 26, at which plaintiff was given an opportunity to offer evidence, to make oral argument and to file briefs. Requests by plaintiff to cross-examine the commission's field examiners and experts and to inspect data gathered by them were refused.

The President's proclamation, which was made subsequent to the investigation hereinafter referred to and subsequent to the report to him by the Tariff Commission, contained, among other things, the following:

Whereas, under and by virtue of said section of said act, the United States Tariff Commission has made an investigation to assist the President in ascertaining the differences in costs of production of and of all other facts and conditions enumerated in said section with respect to an article described in paragraph 83 of Title I of said Tariff Act of 1922, namely, sodium nitrite, being wholly or in part the growth or product of the United States, and of and with respect to a like or similar article wholly or in part the growth or product of competing foreign countries;

Whereas in the course of said investigation a hearing was held, of which reasonable public notice was given and at which parties interested were given a reasonable opportunity to be present, to produce evidence, and to be heard;

And whereas the President upon said investigation of said differences in costs of production of said article wholly or in part the growth or product of the United States and of the like or similar article wholly or in part the growth or product of competing foreign countries, has thereby found that the principal competing

country is Norway and that the duty fixed in said title and act does not equalize the differences in costs of production in the United States and in said principal competing country, namely, Norway, and has ascertained and determined the increased rate of duty necessary to equalize the same.

The appellant in *Norwegian Nitrogen Products Co.* v. *Tariff Commission, supra,* who is appellant in the case at bar, filed in the Supreme Court of the District of Columbia a petition for mandamus directing the Tariff Commission to disclose the information which it had obtained concerning the cost of production, and to do other things which it had requested the Tariff Commission to do as is indicated by the above statement. The Supreme Court of the District of Columbia dismissed the petition, chiefly on the ground that under section 708 of the Revenue Act of September 8, 1916, it was made unlawful for any member of the United States Tariff Commission or employee of the same to make known trade secrets or processes of any person which the commission had investigated.

The petitioner then appealed to the Court of Appeals of the District of Columbia, and while the appeal was pending the commission completed and submitted its report to the President. The Court of Appeals affirmed the judgment of the Supreme Court of the District of Columbia for the reason that the case had become moot by the action of the President in fixing the new rate of duty. Notwithstanding this determination, it reviewed the case at length and held substantially with the appellant's contentions in this case. The cause then went to the Supreme Court of the United States on writ of error where that court vacated the judgments of the two lower courts and remanded the cause with directions to dismiss the petition as moot.

The main consideration that brought the Customs Court to its conclusion that the proclamation was valid is that it concluded that the President had acted in all respects in accordance with the requirements of the statute and that since the President was not required to follow the findings of the commission, any irregularity in the investigation of the commission could not have the effect of invalidating his proclamation. Our decision in *Clarke* v. *United States,* 17 C. C. P. A. (Customs) 420, T. D. 43866, is relied upon as supporting authority.

While the protest raises the constitutionality of the flexible-tariff provision under consideration, this issue is not pressed here, it being conceded that *Hampton, Jr., & Co.* v. *United States,* 14 Ct. Cust. Appls. 350, T. D. 42030, and *Hampton & Co.* v. *United States,* 276 U. S. 394, settle that issue.

The contention of appellant, we think, is sufficiently indicated by what has been heretofore set out. The assignments of error raise all the questions above indicated and also challenge the correctness of the action of the court below in rejecting certain testimony and documentary exhibits offered by appellant and in granting the motion of

the Government to strike out all testimony and documents which had been offered by appellant.

The Government contends that the action of the commission fully complied with the statute; that the proclamation was not subject to judicial review; that any alleged irregularities of the Tariff Commission in its investigations are not properly at issue, and that the questions presented in this appeal are not justiciable. The Government further argues that if the character of the investigation which the Tariff Commission made and the hearing which it held are to be inquired into by the court, in order to determine the validity of the proclamation, it must be found that the appellant obtained all the information and privileges to which it was entitled, and lastly argues that by reason of appellant's refusal to give the Tariff Commission information as to the cost of production and by reason of its failure to cooperate with the Tariff Commission in determining the differences in the cost of production, it had forfeited its right to claim that it did not have a proper hearing before the commission. In view of our conclusion in this case, we deem it unimportant to discuss the last contention of the Government.

We disagree with the contention of the Government that since the proclamation recites that the prerequisites of the statute had been complied with, the truthfulness of these statements can not be inquired into in a proceeding wherein the validity of the proclamation and the validity of the tariff duty levied pursuant thereto is in question.

The decision of this case, as we see it, depends upon what force and effect is to be given the following language used by Congress in section 315 of the Tariff Act of 1922 when read in connection with the other language in the section:

Investigations to assist the President in ascertaining differences in costs of production under this section shall be made by the United States Tariff Commission, and no proclamation shall be issued under this section until such investigation shall have been made. The commission shall give reasonable public notice of its hearings and shall give reasonable opportunity to parties interested to be present, to produce evidence, and to be heard. * * *

The effect of importer's contentions, as we view them, is that a hearing or an investigation is required which is similar to and comparable with a hearing in a judicial tribunal where vital rights are at issue. The whole argument made by counsel for appellant would seem to rest upon the fact that his client had not been granted such a hearing as it was entitled to in order that its rights be protected under the due-process clause of the Constitution. For a number of reasons we conclude that this position can not be successfully defended. It is unnecessary to enumerate or to discuss all of them.

The legislative history of this particular provision is highly suggestive of the intent of the legislature. A provision inserted in the bill

by the committee of the Senate that the commission be authorized to hold such hearings and to adopt such procedure, rules, and regulations as it deemed necessary for adequate investigation under this section, was amended in the Senate so as to read as follows:

The commission shall give reasonable public notice and shall give reasonable opportunity to parties interested to be present and to produce evidence and to be heard. Such hearings shall be public. Subject to the foregoing, the commission is authorized to adopt such reasonable procedure, rules, and regulations as it may deem necessary.

This provision was changed in conference to the form in which it now appears in the statute. The managers on the part of the House reported, volume 62, Congressional Record, part 12, page 12660:

The action of the conferees eliminates the provision of the Senate amendment that the Tariff Commission hearings shall be public and that the President shall make the findings, hearings, and testimony in all proceedings public as soon as practicable after the issuance of a proclamation.

It will be noticed that the provision existing in the bill when it passed the Senate, requiring that the hearings should be public and that the President should make the findings, etc., public, was removed through the recommendation of the conferees. This would seem to imply that it was the intent of Congress by the use of the language in question to permit the commission to have hearings both public and private if it desired; that while it was obligatory upon the commission to give reasonable notice and give interested persons a reasonable opportunity to be present, to produce evidence, and to be heard, its investigations were not in the nature of the trial of an issue entitling the litigants to a full knowledge of all facts submitted, as would be required in many of the hearings referred to in the cases relied upon by appellant.

A consideration of the section as a whole, the purpose it was intended to accomplish as part of a protective-tariff bill, the legislative history of the same, and a comparison of it with somewhat similar provisions in the same act, lead us to the irresistible conclusion that the chief concern of Congress in enacting the particular provision in question was to insure that the President in the performance of the responsible task entrusted to him should have the assistance of a more or less independent agency in ascertaining the facts upon which his proclamation was to depend. At the same time, the language used shows that Congress did not intend that the commission in its investigation should refuse to hear interested parties. We can not conclude, however, that the desire of Congress to afford the President the opportunity of having an unhampered and efficient agency to assist him was subordinated to its solicitude concerning the privileges to be granted interested parties. The correctness of this conclusion becomes

more apparent when viewed in the light of the fact that the rights of interested parties are not necessarily affected in the least by such investigation, since whatever is done by the commission is in no sense binding on the President, but is only intended to assist him in a matter which he alone is authorized to determine.

Since our determination of the kind of investigation the statute requires must necessarily be influenced by a consideration of the purpose of such investigation and the ultimate control it may have over the duty to be levied, it is important to consider what is required of the President and what he is privileged to do. The statute authorizes the President to ascertain the differences in the costs. It is he, after all, who ascertains. He does not have to rely upon the evidence produced before or the recommendations made by the commission. There is nothing in the section which prevents him from making such inquiries as he deems proper or from ignoring everything that is done by the commission. While the evidence produced before the commission, and their findings, except in rare cases, would no doubt be persuasive, they, in no sense, are made binding upon him.

Appellant urges that the quoted portion of the proclamation shows conclusively that the President made no investigation but relied on the investigation of the commission. It is our view that whether the President did or did not rely, wholly or in part, upon an investigation made by himself is immaterial. Our determination of the kind of investigation intended by Congress can not depend on whether the President does or does not avail himself of the privileges he has under the statute.

The plain, unambiguous language of the statute, however, is—

and no proclamation shall be issued under this section until such investigation shall have been made.

The statute further provides that at the commission's hearings in such investigation it—

shall give reasonable opportunity to parties interested to be present, to produce evidence and to be heard.

It seems clear to us that Congress did not wish to entrust the duty of changing tariff rates to the President without assuring that he had at his command a suitable authorized agency to make such inquiry and report such facts as might be helpful to him. Therefore, we think that such an investigation as is indicated by the provision under consideration is a condition precedent to the issuance of a valid proclamation. If no such investigation is had, the proclamation is void, and any duty levied by reason of the same is unwarranted in law. *Hampton & Co.* v. *United States,* 276 U. S. 394; *Union Bridge Co.* v. *United States,* 204 U. S. 364; *William A. Foster & Co. (Inc.) et al.* v.

*United States*, Suit 3458, 20 C. C. P. A. (Customs) 15, T. D. 45673; *United States* v. *Fox River Butter Co.*, cross-appeals, suits 3438 and 3442, 20 C. C. P. A. (Customs) 38, T. D. 45675, the last two cases named decided concurrently herewith. In a suit of this character arising upon protest, the collector's unwarranted action may be successfully challenged. *Hampton, Jr., & Co.* v. *United States*, supra; *Hampton Co.* v. *United States, supra.*

The controlling question before us is: Was there an investigation of the character prescribed by Congress? It is not denied that appellant was given the privilege of being present at the hearing; that it had the opportunity to produce all the evidence it sought to produce, and more than it was willing to produce, and no complaint is made that it was not given reasonable opportunity to be heard at length in argument. It was privileged to cross-examine the chief adverse witness. The witness refused to answer some of the questions, the effect of which refusal is not before us for consideration. Appellant complains that it was denied the right to have full knowledge of all the facts obtained confidentially or otherwise by the commission, which it had the right to meet by rebutting proof and by argument. To hold that appellant was entitled to such privileges as a right granted under the provisions of the statute under consideration would be to hold that appellant's rights at the hearing are comparable to its rights in a lawsuit or in hearings of entirely different character, elsewhere herein referred to.

The hearing before the Tariff Commission was not a judicial inquiry. *Prentis* v. *Atlantic Coast Line*, 211 U. S. 210, 226. If the inquiry at bar when made should result in a finding which would be binding upon the President and result in a new rate of tariff duty being substituted for the old one, there would be considerably more plausibility in appellant's contention. However, we do not mean to say, even under these supposed circumstances, that the interested party has a right in a given tariff rate. No one has any legal right to the continuance of a customs duty. Indeed, he may be deprived of the right of importation entirely.

Appellant has relied upon *Interstate Commerce Commission* v. *Louisville & Nashville R. R. Co.*, 227 U. S. 88; *St. Louis Railway Co.* v. *Interstate Commerce Commission*, 264 U. S. 64, and other quite similar cases as supporting its contention. These cases are not in point for the reasons we have just discussed, if for no other. The hearings before the Interstate Commerce Commission, considered in those cases, resulted in the fixing of rates which the railroads were directed to accept for their services. They involved the maintenance of definite rights which, under due process, the railroads could defend. The hearings of the Commerce Commission were not for the purpose of aiding someone else in determining a rate which might or might

not be finally fixed. The rates were based upon the facts disclosed at the hearings. This is not necessarily so in the case at bar.

We think considerable light is thrown on the question of what kind of investigation was within the contemplation of Congress by a consideration of what it was trying to do by the enactment of the flexible tariff provision. Ordinarily Congress definitely fixes tariff rates in tariff acts. When it enacted the act which included the section under consideration, it recognized that its own investigations as to the differences in production costs were necessarily very limited in their scope and that the rates it prescribed might not accurately measure the differences in such costs. Furthermore, the probability of changes in such costs was to be expected. The President was permitted only to raise or lower the duty 50 per centum and to make nothing dutiable that was free, and nothing free that was dutiable. Surely Congress did not contemplate that the investigation by the President or the Tariff Commission should be carried on under the rules of technical judicial inquiry, when its own inquiries, in trying to equalize production costs, are characterized by so little formality. An inquiry such as appellant contends for, we think would so delay and hinder the operation of the flexible provision as to make it almost useless. In the case at bar the inquiry began nearly 10 years ago. If such an inquiry were required and this court in each instance were called upon to review judicially the details of such inquiry, it would be difficult for the flexible provision to accomplish its intended purpose. Our review of such hearings upon protest would be the same substantially as if Congress had provided a direct appeal to this court.

It is significant, we think, that Congress in section 316 of the same act, relating to unfair competition, provided for an investigation and for an appeal to this court on issues of law. Under that section we are authorized to review and do review questions of law arising from such investigations. *Ex parte Bakelite Corp.*, 279 U. S. 438. If Congress had contemplated what appellant contends for here, we think it more than probable that it, in section 315, *supra*, would have provided for a similar review by this court.

Appellant at the trial below offered in evidence certain documents which constitute 16 exhibits in the case. The Government objected to their admission. The documents were filed but decision as to their admissibility was reserved. At the close of the hearing the Government moved to strike out all of said documents. The court did not rule upon the Government's motion but reserved the decision on the motion, and in its decision, which is now before us, the court said—

The testimony offered by the plaintiff is not only immaterial but incompetent to any issue involved. The objection thereto made by the Government is sustained, the motion to strike it out is granted, and an exception given to the plaintiff.

Appellant has assigned error on this action of the court below. Exhibits 1 to 16 inclusive are as follows:

Exhibit 1. Executive Order of the President, dated October 7, 1922, directed to the commission.

Exhibit 2. Rules adopted by the commission October 26, 1922.

Exhibit 3. Order for investigation by commission.

Exhibit 4. Notice of public hearing.

Exhibits 5, 6, and 7. Testimony taken before commission.

Exhibit 8. Deleted copy of letter to commission by appellant's counsel.

Exhibit 9. Commission's letter to appellant's counsel enclosing summary of information compiled by commission in connection with the investigation.

Exhibit 10. Letter to appellant's counsel giving certain rules and information by the commission.

Exhibit 11. Letter from appellant's counsel to commission asking for information contained in Exhibit 10.

Exhibit 12. Commission's letter to appellant's counsel giving extract from minutes of a meeting of the commission.

Exhibit 13. Letter from appellant's counsel to commission inclosing copy of appellant's counsel's letter to the President.

Exhibit 14. Letter from White House to appellant's counsel acknowledging receipt of letter referred to in Exhibit 13.

Exhibit 15. Letter of appellant's counsel to the President.

Exhibit 16. Report of commission to the President.

If the statement in the proclamation that there had been notice and a hearing of the character prescribed by the statute is conclusive, then, of course, the court's ruling on the Government's motion was correct, regardless of the contents of the offered documents. On the other hand, if the President's proclamation is not conclusive of the things stated, then documents of the character of some of those offered might be very material, depending upon their content. For instance, a notice of a public hearing might constitute substantial evidence that there was no valid notice served. A report of the commission to the President might show affirmatively that there was no investigation of the character required by the statute. As we interpret the statute it would have been proper for the court to have admitted any such document which had evidentiary value toward proving that the prerequisite provisions of the statute had not been complied with. *United States* v. *S. Leon & Co.*, cross appeals, Suits 3487 and 3493, 20 C. C. P. A. (Customs) 49, T. D. 45677, decided concurrently herewith.

We have looked over these exhibits with care and conclude that nothing is therein contained which tends to prove that there was a lack of such notice or investigation by the commission as the statute contemplates. On the contrary, most of the exhibits possess evidentiary value tending to prove that there was such notice and investigation. The appellant was not prejudiced by the court's refusal to receive them.

These exhibits were stricken out by the court below and are not to be regarded here as proof that the statutory prerequisites under consideration were complied with. No affirmative proof is necessary since, in the absence of proof to the contrary, it will be presumed that such prerequisites were complied with.

Many authorities have been cited on both sides as having bearing on the nature of the hearing and investigation before the Tariff Commission. All the many authorities cited on both sides of the case have been considered by us, but we have found it unnecessary to discuss most of them. In *Londoner* v. *Denver*, 210 U. S. 373, 386, in a case involving the nature of a hearing by the city council which the statute granted to those interested in street-improvement taxes, the court said—

If it is enough that, under such circumstances, an opportunity is given to submit in writing all objections to and complaints of the tax to the board, then there was a hearing afforded in the case at bar. But we think that something more than that, even in proceedings for taxation, is required by due process of law. Many requirements essential in strictly judicial proceedings may be dispensed with in proceedings of this nature. But even here a hearing in its very essence demands that he who is entitled to it shall have the right to support his allegations by argument however brief, and, if need be, by proof, however informal.

While this case relates to direct taxation upon property and is not analogous to the exact issue presented here, we think that most of the quoted language used by the court might be well employed in the decision of the case at bar.

We conclude that the statutory prerequisites for the issuance of the proclamation were complied with; that the collector's levying 4½ cents per pound on the involved merchandise was warranted in law, and that the court below properly overruled the protest, and its judgment is *affirmed*.